UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,

Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

Defendant.

CASE NO. 3:23-cv-05007-RJB

ORDER ON PLAINTIFF'S SANCTIONS MOTION

This matter comes before the Court on the Plaintiff's Sanctions Motion for Spoilation of Evidence and Failure to Comply with this Court's September 27, 2023 Order. Dkt. 27. The Court has considered the pleadings filed regarding the motion and the remaining record.

In this case, the Acting Secretary of Labor for the United States Department of Labor ("Secretary") contends that the United States Postal Service ("USPS") violated the Occupational Safety and Health Act of 1970, U.S.C. § 660(c) (referred to as "Section 11(c)"), in connection with the firing of Samuel Sweezer, a probationary mail carrier who was injured on the job. Dkt. 1. The Secretary seeks lost wages, damages, reinstatement, and record expungement for Mr.

Sweezer. *Id.* at 4. She also seeks an order directing USPS to train certain of its employees in the whistleblower protections of OSHA and an order requiring USPS at the East Vancouver, Washington facility to post a notice that USPS will not discriminate against an employee because of engagement in activities protected by Section 11(c). *Id.* Lastly, she claims "other and further relief as may be necessary . . . including costs and attorneys' fees." *Id.*

The Secretary now moves for sanctions in connection with the USPS's discovery production. For the reasons provided below, the motion (Dkt. 27) should be granted in part, and denied, in part.

## I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

#### 1. Allegations in the Complaint

According to Plaintiff's Complaint, Mr. Sweezer began working for USPS as a probationary employee on October 2, 2020. Dkt. 1 at 1. Mr. Sweezer's probationary period was set to end on January 1, 2021. *Id.* at 2.

The Complaint alleges that on November 29, 2020, Mr. Sweezer was injured on the job. *Id.* Mr. Sweezer hit his head while entering his vehicle after delivering a parcel and felt dizzy and nauseous. Dkt. 13-6 at 6. According to the Complaint, he reported the injury to the on-duty supervisor Aleks Navarro, who drove Mr. Sweezer to the hospital. Dkt. 1 at 2. (Mr. Sweezer's assigned supervisor was Mike Woodward. *Id.*) That same day, Acting Postmaster Trisha Adams spoke with Mr. Navarro and human resource manager, Joanne Dunn, regarding Mr. Sweezer. *Id.* Acting Postmaster Adams did not know Mr. Sweezer. *Id.* The next day, Acting Postmaster Adams terminated Mr. Sweezer's employment by letter that provided:

> This is your official notice that you will be separated from the Postal Service on close of Business 11/30/2020. While we had hoped for your success in your

> endeavor, you have failed to work in a safe manner. Safety is my upmost concern and the ability to work in a safe manner while completing your daily duties is essential. All employees are responsible for performing all duties in a safe manner and are expected to discharge their assigned duties conscientiously and effectively, you have failed to do so.

*Id***.**

According to the Complaint, in the USPS's statement to the Occupational Safety and Health Administration ("OSHA"), it added an additional reason for firing Mr. Sweezer – a text message he sent to his assigned supervisor, Mr. Woodward, the day after he was injured. *Id.* at 3. In OSHA's interview with Acting Postmaster Adams, she pointed to two reasons for the termination of his employment: not working in a safe manner and his poor attitude related to when and how much he worked. *Id.*

The Complaint contends that probationary employees like Mr. Sweezer receive an explanation of the initial standards to be met within the first week of employment and receive three evaluations for these standards at 30 days, 60 days and 90 days using Postal Service Form 1750 ("Form 1750"). *Id.* at 3. It alleges that the USPS did not cover the initial standards with Mr. Sweezer, evaluate him, or much less document that it had done so. *Id.*

2. Investigations, Litigation Holds, and USPS's Document Retention

On December 11, 2020, (less then two weeks after Mr. Sweezer was fired), the Secretary sent a letter[1] to the USPS, informing it that the Secretary was investigating the USPS for violations of

[1] The letter was addressed to the lawyer representing USPS in this case. Dkt. 29-13. USPS's counsel in this case represents, and has represented, the USPS in several other Section 11(c) cases, which are assigned to the undersigned. *E.g. Su v. United States Postal Service,* U.S. Dist. Ct. for the Western Dist. of Washington case number 22-5180 RJB; *Su v. United States Postal Service,* U.S. Dist. Ct. for the Western Dist. of Washington case number 22-1176 RJB *Su v. United States Postal Service,* U.S. Dist. Ct. for the Western Dist. of Washington case number 22-6002 RJB. Further, USPS's counsel in this case was USPS's lawyer in *Perez v. United States Postal Service,* U.S. Dist. Ct. for the Western Dist. of Washington case number 12-cv-0315-RSM, where, in July of 2014, the USPS was sanctioned for failing to preserve evidence (Dkt. 66 as amended by Dkt. 71). *Perez* was originally captioned "*Solis v. United States Postal Service* . . . case number 12-315 RSM,*"* but the caption was changed when Perez superseded Solis as U.S. Secretary of Labor.

Section 11(c) relating to Mr. Sweezer's firing. Dkt. 29-13. The USPS was given 20 days to respond to the allegations, including with documentation. *Id.* The letter indicates that the investigation would be undertaken pursuant to 29 C.F.R. Part 1977. This regulation, in part, provides that the Secretary may file an action in U.S. district court "regardless of the pendency of other proceedings." 29 C.F.R. § 1977.18(a)(1).

In addition to the Secretary's investigation, the USPS instituted an internal investigation of Mr. Sweezer's firing. Dkt. 29-7. In April of 2021, in connection with the internal investigation, the USPS issued litigation hold notices to Acting Postmaster Adams, supervisor Navarro, and human resource manager Dunn informing them that they have been identified as people that may have material relevant to Mr. Sweezer's firing and instructing them to search for and save all potentially relevant materials, including electronically stored information. Dkt. 29-7. They each signed the notices. *Id.* The USPS did not send a litigation hold notice to Mr. Sweezer's assigned supervisor Woodward or any other supervisor or manager.

The Secretary and the USPS were not able to resolve the issues raised in the Secretary's investigation informally and this case followed.

**B. PROCEDURAL HISTORY**

The Complaint in this case was filed on January 4, 2023. Dkt. 1. On April 3, 2023, the Secretary propounded interrogatories, requests for production and requests for admission to the USPS. Dkt. 13 at 6-7. USPS responded to the requests for admission on April 28, 2023 and to the remaining discovery on June 16, 2023. *Id.* at 7. The USPS supplemented its discovery responses in July and August 2023. *Id.*

On September 27, 2023, the Secretary's motion (1) to compel certain discovery was granted, (2) to sanction the USPS (for failure to produce certain discovery) through adverse

inferences was denied without prejudice, and (3) her motion for an award of costs was denied. Dkt. 20.

USPS produced additional discovery. The Secretary raised issues with that production. Counsel for both parties met and conferred in accordance with Fed. R. Civ. P. 37(a)(1) and Local Rule for Western District of Washington ("Local Rule") 37(a)(1) regarding the issues raised here and were unable to come to a resolution.

The Secretary now moves for an order (1) compelling the USPS to expand its email and text message searches and produce the results within 11 days of this order; (2) sanctioning the USPS for spoilation of evidence with a negative inference that the reasons USPS provided for firing Sweezer were pretextual and that it fired him because he reported a workplace injury; (3) warning "the USPS that further similar conduct will result in more severe sanctions," and (4) awarding the Secretary costs for the motion. Dkts. 27 and 31.

The USPS does not object to expanding its email and text messages search. Dkt. 30. It argues that the Secretary is not entitled to a negative inference or costs for the motion. *Id.*

After the pending motion and response was filed, the parties started conducting depositions. Dkt. 32-1. As is relevant to this motion, human resource manager Dunn testified that the USPS does not issue mobile phones to supervisors; those supervisors use their personal phones to send text messages about work and to occasionally send work emails. Dkt. 32-1 at 12. Dunn testified that she has now deleted all e-mails she sent or received about Mr. Sweezer because her e-mail got so full her computer would not work. *Id.* at 15. She also testified that her mobile phone quit working around December 2022 or January 2023 so she does not have access to text messages she might have sent about Mr. Sweezer in 2020 or 2021. *Id.* Human resource manager Dunn also indicates that she would have deleted those text messages anyway because they were old.

*Id.* She also acknowledged that she signed the April 2021 litigation hold and "doesn't know" if she complied with it. *Id.* at 16.

The record does not contain the deposition testimony of Acting Postmaster Adams. The Secretary's lawyer's declaration indicates that Adams testified that she deleted her emails, usually once a month and so did not segregate, save, or produce any emails from December 2020 related to Mr. Sweezer. Dkt. 32 at 2.

The record does not contain the deposition testimony of supervisor Woodward, Mr. Sweezer's assigned supervisor. The Secretary's lawyer's declaration indicates that Woodward testified that he threw Mr. Sweezer's personnel file (which Woodward kept on his desk) into the trash after Mr. Sweezer was fired. Dkt. 32 at 3. Woodward purportedly testified that the file would likely have contained forms and "counselings" about Mr. Sweezer's job performance. *Id.*

## II.     DISCUSSION

### A. DISCOVERY STANDARD GENERALLY AND MOTION TO COMPEL EXPANSION OF USPS'S ELECTRONIC SEARCH FOR DOCUMENTS

Fed. R. Civ. P. 26(b)(1) provides: "[U]nless otherwise limited by court order, the scope of discovery is as follows:  parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." The court "should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, n.12 (1978)(*quoting* 4 J. Moore, Federal Practice ¶ 26.56 [1], p. 26-131 n. 34 (2d ed. 1976)).

Fed. R. Civ. P. 37(a)(3)(B), provides in part, that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iv) a party fails to produce documents . . . as required under Rule 34."

As stated above, the USPS does not oppose expanding its search for emails and text messages. The Secretary's motion to compel the USPS to expand its electronic search for emails and text messages should be granted as follows: the USPS should expand its search for emails and text messages between the email accounts (personal and business) of all supervisors/managers within the Postal Service District to which the East Vancouver Postal Facility is, and at the relevant time was, a part, from January 1, 2020, to the present, for the word "Sweezer."

Further, the USPS acknowledges that it did not produce discovery related to Postal Service Form 1750. As stated in the September 27, 2023 order, "Form 1750" is a form used for probationary employees. Dkt. 20. Discovery related to this form was ordered in that September 27, 2023 order. *Id.* The Secretary's motion to compel discovery related to this form should be granted as follows: the USPS should expand its search for emails and text messages between the email accounts (personal and business) of its employees within the Postal Service District to which the East Vancouver Postal Facility is, and at the relevant time was, a part, from January 1, 2020, to September 30, 2021, using search terms: "PS Form 1750," "Form 1750," and "1750."

The above production should be made by January 23, 2024. The Court recognizes that this date is beyond the discovery cutoff date of January 15, 2024 and that case deadline extensions may be necessary. At this point, the necessity of an extension is not clear.

**B. MOTION FOR NEGATIVE INFERENCES FOR USPS'S SPOILATION OF EVIDENCE**

The Secretary points to two grounds to impose negative inferences for the USPS's spoilation of evidence: loss of electronically stored information and supervisor Woodward's disposal of Mr. Sweezer's personnel file in the trash.

1. Loss of Electronically Stored Information

Fed. R. Civ. P. 37(e), Failure to Preserve Electronically Stored Information, provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Accordingly, to receive relief under Rule 37(e)(1), the Secretary must show (a) the USPS had a duty to preserve electronic information in anticipation or conduct of litigation, (b) it failed to take reasonable steps to preserve it, (c) that information can't be restored or replaced through additional discovery, and (d) the Secretary is prejudiced by the loss. In order to receive the relief provided under Rule 37(e)(2), the Secretary must additionally show that the USPS "acted with the intent to deprive" the Secretary "of the information's use in the litigation."

**Fed. R. Civ. P. 37(e)(1).** The Secretary has adequately demonstrated that electronically stored information that should have been preserved in the anticipation or conduct of litigation was lost in this case. She has further shown that she is prejudiced by the loss.

*a. USPS had a Duty to Preserve Electronic Information*

The duty to preserve evidence "is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D.

Ariz. 2011). Eleven days after Mr. Sweezer was fired, the Secretary notified the USPS that it was being investigated for violation of Section 11(c) and that litigation in U.S. district court was a possibility. Dkt. 29-13. This December 11, 2020 letter from the Secretary triggered the USPS's duty to preserve potentially relevant evidence in its possession. *Perez v. United States Postal Serv*., 2014 WL 10726125, at *3 (W.D. Wash. July 30, 2014)(Secretary's letter to USPS that it was under investigation for violation of Section 11(c) triggered the USPS's duty to preserve relevant evidence).

b. *The USPS Failed to Take Reasonable Measures to Preserve Relevant Electronically Stored Information*

"Once its duty to preserve was triggered, USPS was obligated to take effective measures to preserve potentially relevant documents, such as suspending existing deletion policies and issuing effective litigation holds." *Id.* The USPS failed to issue litigation hold notices to all people who may have had relevant information, including Mr. Sweezer's assigned supervisor, Woodward. Further, the litigation hold notices that were issued were sent four months after his firing. Moreover, there is no evidence in the record that any of the parties who received those notices complied with them. The USPS failed to take reasonable measures to preserve electronically stored information.

c. *Information Can't be Restored through Additional Discovery*

The Secretary has sufficiently shown that at least some potentially relevant electronically stored information, that the USPS had a duty to preserve, was lost and can't be restored through additional discovery. Acting Postmaster Adams and human resources manager Dunn testified that they have now deleted all text messages and emails related to Mr. Sweezer even though they both received, and signed, litigation hold notices in April of 2021. Dunn testified that she no longer has access to the mobile phone she had at the time. There is no evidence that text

messages or emails from either Adams or Dunn can be restored. Further, the USPS has repeatedly asserted in its pleadings that its employees have searched for, and turned over, all that they could find. While this order requires that the USPS expand its email searches to other supervisors and managers, it is not clear that emails or text messages about Sweezer (at a minimum to and from Acting Postmaster Adams, who made the decision to fire him, and human resource manager Dunn, who was involved in the decision) would be recoverable in other discovery.

c. *The Secretary is Prejudiced by the Loss of Information*

The Secretary has sufficiently shown that lost information is prejudicial to her case. She properly points out that poor job performance is one of the grounds on which the USPS asserts that it fired Mr. Sweezer. The Secretary contends that this defense is pretext. To the extent they exist, electronic communications to and from Acting Postmaster Adams and human resource manager Dunn, about why Mr. Sweezer was fired appear to have been deleted. Whether electronic communications about Mr. Sweezer between other supervisors have been deleted is not in the record. While the USPS argues that any lost communications were irrelevant, that is not clear. As the party that failed to preserve evidence, the USPS bears the consequence of uncertainty regarding whether the communications were relevant and the resulting prejudice. *Perez* at 3.

**Conclusion on Fed. R. Civ. P. 37(e)(1)**. The requirements of Fed. R. Civ. P. 37(e)(1) are met. Accordingly, the Court may "order measures no greater than necessary to cure the prejudice." Rule 37(e)(1). Those "measures" will be discussed below in Section II.B.3.

**Fed. R. Civ. P. 37(e)(2) and Conclusion on Fed. R. Civ. P. 37(e)(2).** The Secretary requests imposition of negative inferences – a sanction available under Fed. R. Civ. P.

37(e)(2)(A). As stated above, in order to be awarded this sanction, the Secretary must show that the requirements of Rule 37(e)(1) are met and that the loss of the electronic information was done with the intent to deprive her of the information at trial. Fed. R. Civ. P. 37(e)(2). In *Perez,* the USPS was sanctioned with negative inferences for failing to timely issue and enforce litigation hold notices in a Section 11(c) case. *Id.* (noting that the litigation hold notices were issued three months after the investigation letter from the Secretary and was not sent to all supervisors with relevant information). Six years later, in this case, the USPS again failed to timely issue and enforce litigation hold notices to supervisors with potentially relevant information resulting in the loss of information about Mr. Sweezer's job performance and the circumstances surrounding his injury. The Court concludes that the USPS's failure to timely issue litigation hold notices to all supervisors with potentially relevant information and to ensure that its employees complied with the notices was done with the intent to deprive the Secretary of the information at trial. Fed. R. Civ. P. 37(e)(2) sanctions apply to the lost electronic communications. The sanctions will be discussed below in Section II.B.3.

2. Destruction of the Personnel File

The Secretary points to an additional ground for the Court to sanction the USPS with negative inferences - that is supervisor Woodward's destruction of Mr. Sweezer's personnel file.

A district court can sanction a party who has despoiled physical evidence pursuant to the "inherent power of federal courts to levy sanctions in response to abusive litigation practices." *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006). A party's destruction of evidence "qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Id.* at 959. As stated above in Section II.B.1., the USPS was on notice that documents (like those asserted to be in Mr. Sweezer's

personnel file) were potentially relevant to possible litigation by the December 11, 2020 letter and the USPS had an obligation to preserve these documents. It failed to act to preserve the personnel file and due to the deletion of electronically stored information, the contents of the file may not be recoverable through other discovery. Further, the Secretary has shown that destruction of Mr. Sweezer's personnel file is prejudicial to her case. The Secretary is entitled to sanctions for the destruction of Mr. Sweezer's personnel file.

3. Sanctions

The Secretary has established that she is entitled to an award of sanctions under Fed. R. Civ. P. 37(e) for the loss of electronically stored information and under the Court's inherent power to respond to abusive litigation tactics. Negative inferences will be drawn against the USPS regarding the content of lost electronic communications and Mr. Sweezer's personnel file about the reasons he was fired and whether the USPS's proffered poor performance based justification was pretext. This case will not be tried by a jury. The Court will determine when to make specific findings as are necessary to resolve issues that arise in motions and at trial, including additional sanctions.

**C. MOTION FOR WARNING**

Due to the above rulings, no further warning to the USPS is necessary.

**D. MOTION FOR COSTS**

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is granted the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorneys' fees, incurred in making the motion unless "other circumstances make an award of expenses unjust."

The Secretary's motion for expenses (Dkt. 27) for having to bring this motion should be granted, as permitted by law. Her motion to compel the USPS to expand its email and text message search parameters is granted by this order. The USPS did not demonstrate that other circumstances make an award of expenses unjust. The Secretary did not ask for any particular amount. The Secretary should file a short brief, with the requested amount by January 11, 2024; the USPS's response, if any, should be filed by January 17, 2024; and the Secretary's reply, if any, should be filed by January 19, 2024.

## III. ORDER

It is **ORDERED** that:

The Secretary's Sanctions Motion for Spoilation of Evidence and Failure to Comply with this Court's September 27, 2023 Order (Dkt. 27) **IS DENIED, IN PART,** as to the motion for a warning and **GRANTED, IS PART, AS FOLLOWS**:

- The USPS **SHALL** expand its search for emails and text messages between the email accounts (personal and business) of all supervisors/managers within the Postal Service District to which the East Vancouver Postal Facility is, and at the relevant time was, a part, from January 1, 2020, to the present, for the word "Sweezer" and produce the results by **January 23, 2024**;
- The USPS **SHALL** expand its search for emails and text messages between the email accounts (personal and business) of its employees within the Postal Service District to which the East Vancouver Postal Facility is, and at the relevant time was, a part, from January 1, 2020, to September 30, 2021, using search terms: "PS Form 1750," "Form 1750," and "1750" and produce the results by **January 23, 2024**;

- Negative inferences will be drawn against the USPS regarding the content of lost electronic communications and Mr. Sweezer's personnel file, about the reasons he was fired and whether the USPS's proffered poor performance based justification was pretext; and
- Expenses, as permitted by law, **SHALL** be awarded to the Secretary for having to bring this motion. To determine the amount awarded, the Secretary's short brief, with the requested amount **IS DUE** by **January 11, 2024**; the USPS's response, if any, **IS DUE** by **January 17, 2024**; and the Secretary's reply, if any, **IS DUE** by **January 19, 2024**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 2nd day of January, 2024.

ROBERT J. BRYAN
United States District Judge